AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

JAN 0 7 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.   2 0 M J 0 0 5 7 |
| Target Devices (Target Phones 1-7, Target Laptop, Target Tablet, Target Thumb Drive, Target SIM Cards 1 and 2) | ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Attachment A, incorporated fully herein.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
Attachment B, incorporated fully herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| Title 18 USC 922(g), 924(c); Title 21 USC 841(a)(1), 846 | Felon in possession of firearm or ammunition; Use/possession of firearm in furtherance of drug trafficking offense; Possession with intent to distribute/distribution of controlled substances and conspiracy |

The application is based on these facts:

See attached affidavit, incorporated fully herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Chad Joseph, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/7/2020

_____
*Judge's signature*

City and state: San Diego, CA

Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION TO SEARCH
## CELLULAR TELEPHONE

I, Chad D. Joseph, being duly sworn, declare and state:

### I.

### TRAINING AND EXPERTISE

1.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since May 2018.  Before joining ATF, I was employed as a Federal Air Marshal with the Department of Homeland Security for twelve years.

2.      I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator's Training Program and the ATF National Academy's Special Agent Basic Training course.  During that training, I received instruction regarding a wide variety of investigative techniques which are commonly used in support of a wide range of the ATF's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, physical surveillance, forensic techniques, interviewing, and a variety of other subjects.  As a Special Agent, I have received training in federal firearms laws and have been the affiant on search and arrest warrants for such violations, including investigations of persons prohibited from possessing firearms.  In this realm, I have authored affidavits for search warrants and complaints.  I have acted as the lead investigator on a variety of cases involving firearms violations and have participated in multiple cases that have focused on gang-related matters.

3.      Since November 2018, I have been assigned to the North County Regional Gang Task Force ("NCRGTF"). The San Diego County Sheriff's Department has appointed me as a Special Deputy assigned to the Sheriff's Department Special Investigation Division and specifically assigned to the NCRGTF. During my time at the NCRGTF, I have participated in investigations involving criminal gang members and performed various investigative tasks, including physical and stationary surveillance, handling informants

and cooperating sources.  In addition, I have received on the job training in the manner in which narcotics are packaged, consumed, transported, and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how narcotics are packaged for sale, and how drug dealers store, conceal, sell, smuggle, and transport narcotics.

4.    Based on my training and experience, I am familiar with how drug traffickers communicate and operate. For example, I am aware that drug traffickers frequently discuss criminal activity using cellular telephones and often use coded language to obscure these conversations. I also know that drug traffickers change phones or have multiple devices as a means to evade detection by law enforcement. Moreover, I know that drug traffickers obtain phones from third parties and or subscribe to them in fictitious names in order to mask the true identity of the individuals using the phones. I am also aware of how drug traffickers organize and operate their illegal activities, including the use of locations, Audis, and other resources, in the furtherance of their criminal activities. I am familiar with the typical make up and operation of drug trafficking organizations, including the distribution, storage, and transportation of the drugs; the use and possession of firearms for protection and during the commission of other illegal activity, such as drug deals; and, the collection of proceeds of drug trafficking and other criminal activity.

5.    The following is based my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, searches, and other investigation. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation.  In the affidavit, all dates and times are approximate. Conversations and discussions below are set forth in substance unless noted. I have included in parentheses or in brackets my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation.

## II.

## PURPOSE OF AFFIDAVIT

6.     I make this affidavit in support of an application by the United States of America for the issuance of warrants to search the following electronic devices, collectively referred to as "**Target Devices**," described as follows and in Attachment A, incorporated herein:

      a.  **Target Phone 1**: an Apple iPhone cellular telephone bearing IMEI 359487086942360;

      b.  **Target Phone 2**: Gold Samsung Galaxy S7 cellular phone, bearing IMEI 359754071607278;

      c.  **Target Phone 3**: Black WIKO cellular phone bearing IMEI 352280101790964;

      d.  **Target Phone 4**: Black Samsung cellular phone bearing IMEI 359617/08/308007/5;

      e.  **Target Phone 5**: Black iPhone bearing IMEI 359494080161179;

      f.  **Target Phone 6**: White Motorola Model E moto cellular phone bearing IMEI 99000626795261;

      g.  **Target Phone 7**: Gold Motorola cellular phone bearing IMEI 355674084045668;

      h.  **Target Laptop**: Elite Book 840 laptop computer bearing serial number BCALN106M1FCG1MAWI;

      i.  **Target Tablet**: Black Samsung tablet bearing IMEI 354736077183128;

      j.  **Target Thumb Drive**: Black PNY 32 GB thumb drive;

      k.  **Target SIM Card 1**: SIM card bearing number 8901260333921234721;

      l.  **Target SIM Card 2**: SIM card bearing number 8901260842166891607.

7.     The **Target Devices** are believed to have been used by or be in the possession of Oscar MILLAN ("MILLAN"), and were seized incident to his arrest by law enforcement officers on July 1, 2019.  The **Target Devices** are currently in the possession of the ATF,

1  located at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008, in the Southern

2  District of California. I submit that the facts contained herein demonstrate probable cause

3  to believe that the fruits, instrumentalities and evidence of violations of Title 18, United

4  States Code, Sections 922(g)(1) (Felon in Possession of a Firearm) and 924(c)

5  (Use/Possession of firearm in furtherance of drug trafficking activity); and Title 21, United

6  States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances;

7  Distribution of Controlled Substances; Possession with Intent to Distribute Controlled

8  Substances), are located in the **Target Devices**, and seek authorization to search for and

9  seize that information, as further detailed in Attachment B, incorporated herein.

10  ### III.

11  ### FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

12  8.  On July 1, 2019, Oceanside Police Department ("OPD") officers conducting

13  patrol noticed a white Audi bearing California plate 8BWA572 ("the Audi") in an unusual

14  location of the parking lot at 155 Old Grove Road, Oceanside, California. The Audi was

15  stopped with no headlights on, facing eastbound along the west curb of the parking lot with

16  a male standing outside of the open driver's side door. As officers approached the Audi, the

17  male got into the driver's seat and started to drive away. Records checks revealed the Audi

18  had been reported stolen in San Diego, California, on May 9, 2019. Officers conducted a

19  felony stop of the Audi as it drove into a residential area. The driver, later identified as

20  MILLAN, was ordered to exit the Audi.

21  9.  Officers briefly spoke with MILLAN. MILLAN initially told officers he got the

22  Audi from a friend, but did not know his friend's name. MILLAN then told officers that the

23  Audi belonged to his friend "Brian." MILLAN claimed he got the Audi from "Brian" that

24  afternoon in Chula Vista and he was unaware the Audi was reported stolen. Officers asked

25  MILLAN if he had any personal items in the Audi and MILLAN said he had a black

26  backpack and white plastic bag containing clothing in the backseat of the Audi. MILLAN

27  also had the keyless entry fob to the Audi on a clip attached to his belt.

28  //

10.     Officers then ordered the front seat passenger, H.S., to exit the Audi. H.S. disclaimed any knowledge of the Audi being stolen. H.S. stated MILLAN had been driving the Audi for approximately three weeks, and H.S. had been in said Audi with MILLAN approximately ten times within the three week time frame. Officers ask H.S. if there was any personal property in the Audi that belonged to her, to which H.S stated she had a beige purse, a cellphone, and a wallet holder in the center console, and a pink bag in the backseat of the Audi. During a later interview, H.S. told officers MILLAN had received the Audi from his friend "Brandon."

11.     While conducting a search of the Audi, officers located four baggies containing white crystalline substances inside of the black bag belonging to MILLAN. The black bag was located in the rear seat behind the driver's seat. The black bag also contained prescription bottles in MILLAN's name and a paycheck with MILLAN's name and address. Officers also located an empty concealment holster for a firearm in the backseat. Subsequent DEA laboratory analysis of the white crystalline substances in the baggies and confirmed it was approximately 10 grams of methamphetamine (actual) total. Based upon my experience and training, I know 10 grams of methamphetamine is a distributable amount of drugs, which is further supported by the fact that it was divided into four baggies.

12.     Officers searched the front driver's side area and center console of the Audi, where they located several receipts for various locations, all of which were after the date the Audi was reported stolen. Officers also located a latch on the front of the driver's seat, which revealed a hidden compartment built into the seat. Upon opening the compartment, officers located a loaded Smith & Wesson, model SPL, .38 caliber revolver bearing serial number SN CNV3358. The firearm was loaded with five rounds of ammunition. Officers found a manila folder with registration and insurance documents in the glove compartment of the Audi. Upon further inspection of these documents, officers believed the registration had been falsified and appeared counterfeit. Additionally, officers located insurance documents from National General Insurance listing MILLAN as the insured party for the stolen Audi with an effective date of May 19, 2019, approximately five days after the Audi had been

1  reported stolen. All of the **Target Devices** were seized from the Audi during the search.
2  The officers placed MILLAN under arrest for narcotics and firearms violations.[1]

3      13.      As part of this investigation, officers contacted the registered owner of the
4  Audi, A.A. A.A confirmed he did not lend the Audi to anyone; nor did anyone have
5  permission to possess it. Also as part of this investigation, officers contacted the registered
6  owner of the firearm.  The registered owner indicated that his ex-wife, S.L., had the firearm
7  until it was stolen out of her storage unit in San Diego in mid-May 2019. Further
8  investigation revealed that S.L. had reported to the San Diego Sheriff's Department that
9  her Audi had been burglarized on May 12 or 13, 2019, and that the burglars took her storage
10 unit information and keys from her Audi.  S.L. had informed the Sheriff's Department that
11 her storage unit was at Super Storage in Vista, California.  S.L. also reported to the Sheriff's
12 Department that early in the morning on May 13, 2019, individuals broke into her storage
13 unit and stole various items, including designer-brand items worth significant money.
14 Investigators obtained a copy of surveillance footage from Super Storage from the morning
15 of May 13, 2019.  The surveillance footage depicted two males (identity not confirmed)
16 driving into the storage facility in the Audi early in the morning on May 13, 2019, stopping
17 at S.L.'s storage unit, and carrying several items out of the unit with them.

18      14.      Given the proximity in time between the vehicle theft (reported on May 9,
19 2019), the storage unit theft (reported on May 13, 2019), and the date on the suspected
20 fraudulent vehicle registration possessed by MILLAN (May 19, 2019), it is suspected that
21 MILLAN may have been one of the individuals who stole the Audi and then burglarized the
22 storage unit, which contained the firearm that was eventually seized incident to MILLAN's
23 arrest on July 1, 2019.  I also believe that the **Target Devices** either may belong to
24 MILLAN, since I know drug traffickers often carry multiple electronic devices, or may have
25 been stolen by MILLAN, similar to the vehicle and firearm. Therefore, based upon my
26 experience and training, consultation with other law enforcement officers experienced in
27

28 [1]      MILLAN's criminal history consists of at least three prior felony convictions:
possession of a controlled substance (1999), burglary (2011), and conspiracy to bring drugs
into a jail (2018).

drug and irearms investigations, and all the facts and opinions set forth in this affidavit, I believe that the information to be collected from the **Target Devices** is relevant to the ongoing investigation of violations of Title 18, United States Code, Sections 922(g)(1) (Felon in Possession of a Firearm) and 924(c) (Use/Possession of firearm in furtherance of drug trafficking activity); and Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances; Distribution of Controlled Substances; Possession with Intent to Distribute Controlled Substances).

## IV.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

15.   Based upon my experience and training, consultation with other law enforcement officers experienced in firearms and drug investigations, and all facts and opinions set forth in this affidavit, I know that:

a.   Individuals who are prohibited from possessing firearms often keep photos or videos of them holding and shooting their firearms, or text messages with friends and associates discussing the firearms, and these photos, videos, and messages are often found on their digital devices, including cellular telephones, laptops, tablets and other electronic media storage devices.

b.   Individuals who are prohibited from possessing firearms often purchase or obtain firearms from other individuals in order to avoid going to a formally licensed firearms dealer. These firearm purchases or transactions often occur through phone calls, emails and/or text messages between the prohibited person and an associate, friend, or co-conspirator. Therefore, the prohibited person's cellular telephone, laptops, tablets and other electronic media storage devices may contain messages detailing the transfer, sale, or possession of firearms.

c.   Drug traffickers commonly use cellular telephones, laptops, tablets and other digital devices to communicate with, among others, their customers, their suppliers, and other criminal associates, and to store phone numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence

of their drug distribution activities. Drug traffickers also commonly store records of the business of distributing and selling drugs on cellular phones, laptops, tablets and other electronic devices.

d.      An examination of the **Target Devices** will enable investigators to establish further evidence of MILLAN's possession of the firearm and participation in drug distribution. Cellular telephones, laptops, tablets, and electronic communication devices are capable of storing many different types of data that are invaluable to investigators and could be evidence of criminal conduct and indicia of the identity of the individual under investigation and/or his associates. This data, sought pursuant to the requested search warrant, consists of the contents of the cell phone or electronic communication device's memory, including: stored names and telephone numbers in the memory, "phonebook," or list of contacts, and/or speed dial functions of the phone; phone numbers dialed for the most recent outgoing or "sent" calls of the telephone, along with date and time of call data; phone numbers dialing the telephone for the most recent incoming "received" calls, along with date and time of the call data; phone numbers dialing the telephone for the most recent "missed" calls, along with date and time of call data; GPS navigation information; voicemail messages, text messages, electronic messages (e-mail), photographs, videos, and calendars; internet searches and websites viewed; and deleted data.

## V.

## PROCEDURE FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE, LAPTOPS, TABLETS, ELECTRONIC MEDIA

16.    It is not possible to determine, merely by knowing the cellular telephones, laptops, or tablets make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the device. Cellular devices, laptops and tablets today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular

service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, agents will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## VI.

## CONCLUSION

19. Based upon my experience and training, consultation with other law enforcement officers experienced in drug and firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that probable cause exists to conclude that the **Target Devices**, as further described in Attachment A, incorporated herein, were utilized

1  to facilitate violations of Title 18, United States Code, Sections 922(g)(1) (Felon in

2  Possession of a Firearm) and 924(c) (use/possession of firearm in furtherance of drug

3  trafficking activity); and Title 21, United States Code, Sections 841(a)(1) and 846

4  (Conspiracy to Distribute Controlled Substances; Distribution of Controlled Substances;

5  Possession with Intent to Distribute Controlled Substances). Furthermore, I believe there

6  is probable cause to conclude that the **Target Devices** contain stored data that constitutes

7  evidence, fruits, and instrumentalities of such violations, and I respectfully request a

8  warrant be issued authorizing a search for and seizure of that data, as further described in

9  Attachment B, incorporated herein.

10        I swear the foregoing is true and correct to the best of my knowledge and belief.

Chad D. Joseph
Special Agent, ATF

14  SUBSCRIBED and SWORN to before me this ____7____ day of January, 2020.

Honorable Mitchell D. Dembin
United States Magistrate Judge

**ATTACHMENT A**
PROPERTIES TO BE SEARCHED

The properties (collectively referred to as **"Target Devices"**) to be searched in connection with an investigation of violations of Title 18, United States Code, Sections 922(g)(1) (Felon in Possession of Ammunition and Firearm) and 924(c) (Use/Possession of firearm in furtherance of drug trafficking offense); and Title 21, United States Code, Sections 841(a)(1) and 846 (Conspiracy to Distribute Controlled Substances; Distribution of Controlled Substances; Possession with Intent to Distribute Controlled Substances), are described below:

a. **Target Phone 1**: an Apple iPhone cellular telephone bearing IMEI 359487086942360;

b. **Target Phone 2**: Gold Samsung Galaxy S7 cellular phone, bearing IMEI 359754071607278;

c. **Target Phone 3**: Black WIKO cellular phone bearing IMEI 352280101790964;

d. **Target Phone 4**: Black Samsung cellular phone bearing IMEI 359617/08/308007/5;

e. **Target Phone 5**: Black iPhone bearing IMEI 359494080161179;

f. **Target Phone 6**: White Motorola Model E moto cellular phone bearing IMEI 99000626795261;

g. **Target Phone 7**: Gold Motorola cellular phone bearing IMEI 355674084045668;

h. **Target Laptop**: Elite Book 840 laptop computer bearing serial number BCALN106M1FCG1MAWI;

i. **Target Tablet**: Black Samsung tablet bearing IMEI 354736077183128;

j. **Target Thumb Drive:** Black PNY 32 GB thumb drive;

k. **Target SIM Card 1:** SIM card bearing number 8901260333921234721;

l. **Target SIM Card 2**: SIM card bearing number 8901260842166891607.


Currently in the possession of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives, located at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A, incorporated herein, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The search of the **Target Devices** will be conducted in accordance with the protocol delineated in the affidavit submitted in support of the warrant, incorporated herein.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data, such as emails, text messages, photographs, audio files, videos, and location data:

a.     tending to identify possession of a firearm and/or ammunition, and/or attempts to distribute, distribution of, or possess with the intent to distribute controlled substances;

b.     tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers used to facilitate the possession of firearms and/or ammunition, and/or distribution or possession with intent to distribute controlled substances;

c.     tending to identify co-conspirators, criminal associates, or others involved in the sale, transfer, and/or possession of firearms and/or ammunition, and/or the distribution or possession with the intent to distribute controlled substances;

d.     tending to identify travel to or presence at locations involved in the sale, transfer, and/or possession of firearms and/or ammunition, and/or distribution or possession with intent to distribute controlled substances, such as meet locations or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the **Target Devices**; and,

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 922(g)(1) and 924(c), and Title 21, United States Code, Sections 841(a)(1) and 846.**